# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY LEON SCOTT, | Case No. 1:22-cv-01324-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 10, 15, 17, 18) |
| Defendant. | |

## I.

## INTRODUCTION

Gregory Leon Scott ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing: (1) that the ALJ's physical RFC determination is not supported by substantial evidence and erroneous because the ALJ improperly discounted the January 2020

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 6, 8, 9.)

opinion of Allen F. Fonseca, M.D; and (2) the ALJ's mental RFC determination is not supported by substantial evidence and erroneous because the ALJ crafted the mental RFC without the benefit of medical guidance.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied, Defendant's cross-motion for summary judgment shall be granted, and Plaintiff's social security appeal shall thus be denied.

## II.

## BACKGROUND

### A.    Procedural History

On September 12, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a period of disability beginning on April 3, 2018.  (AR 27, 323.)  Plaintiff's application was initially denied on February 25, 2020, and denied upon reconsideration on May 28, 2020.  (AR 115-119, 121-125.)  Plaintiff requested and received a hearing before Administrative Law Judge Anthony J. Johnson, Jr. (the "ALJ").  (AR 45-83.) Plaintiff appeared for a hearing before the ALJ on June 9, 2021.  (AR 15.)  On May 28, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 24-45.)  On July 14, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 5-10.)

On October 17, 2022, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On January 13, 2023, Defendant filed the administrative record ("AR") in this action.  (ECF No. 10.) Following an extension of the briefing schedule, on May 15, 2023, Plaintiff filed an opening brief in support of summary judgment.  (Pl.'s Opening Br. ("Br."), ECF No. 15.)  On June 28, 2023, Defendant filed an opposition brief and motion for cross-summary judgment.  (Def.'s Opp'n ("Opp'n"), ECF No. 17.)  On July 13, 2023, Plaintiff filed a reply.  (ECF No. 18.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 14, 2021:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant engaged in substantial gainful activity during the following periods: 2018 through 2020 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: cervical myelomalacia at C3-C4; severe spinal stenosis at C7-T1 with stenosis at T4-T5, T7-T8, and T10-T12; lumbar stenosis with cord compression at L5-S1; status-post laminectomy at T4-T5; polyneuropathy; sleep apnea; obesity; and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except: able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk four hours in an eight-hour workday and sit six or more hours in an eight hour workday; able to occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; able to understand, remember, and carry out simple and routine work related instructions; concentrate for periods of two hours on work related tasks before requiring a break; able to perform non-production pace/non-assembly line pace jobs, with few workplace changes, occasional decision-making, and no responsibility for the safety of others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 31, 1969 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

1     claimant is "not disabled," whether or not the claimant has transferable job skills (See

2          SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

3     10. Considering the claimant's age, education, work experience, and residual functional

4          capacity, there are jobs that exist in significant numbers in the national economy that

5          the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

6     11. The claimant has not been under a disability, as defined in the Social Security Act,

7          from April 3, 2018, through the date of this decision (20 CFR 404.1520(g)).

8   (AR 29-40.)

**III.**

**LEGAL STANDARD**

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1    significant number of jobs in the national economy that the claimant can perform given her RFC,

2    age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

3    1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational

4    Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2;

5    Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

6    "Throughout the five-step evaluation, the ALJ is responsible for determining credibility,

7    resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at

8    1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

9            **B.      Standard of Review**

10           Congress has provided that an individual may obtain judicial review of any final decision

11   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

12   In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

13   by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

14   2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

15   must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42

16   U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is

17   relevant evidence which, considering the record as a whole, a reasonable person might accept as

18   adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

19   2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

20   see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantive-evidence

21   standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary

22   sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means

23   more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

24   Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

25   quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

26   Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is

27   harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not

28   harmless "normally falls upon the party attacking the agency's determination."  Shinseki v.

1  Sanders, 556 U.S. 396, 409 (2009).

2  Finally, "a reviewing court must consider the entire record as a whole and may not affirm

3  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

4  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

5  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

6  review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

7  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is

8  not this Court's function to second guess the ALJ's conclusions and substitute the Court's

9  judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational

10  interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting

11  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

12  **IV.**

13  **DISCUSSION AND ANALYSIS**

14  Plaintiff presents two main challenges: (1) that the ALJ's physical RFC determination is

15  not supported by substantial evidence and erroneous because the ALJ improperly discounted the

16  January 2020 opinion of Allen F. Fonseca, M.D; and (2) the ALJ's mental RFC determination is

17  not supported by substantial evidence and erroneous because the ALJ crafted the mental RFC

18  without the benefit of medical guidance.

19  **A.     Applicable General Legal Standards**

20  1.     RFC Determination

21  The RFC is an assessment of the sustained, work-related physical and mental activities

22  the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§

23  404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th

24  Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it

25  represents the maximum amount of work the claimant is able to perform based on all the relevant

26  evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be

27  "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not

28  a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20

C.F.R. §§ 404.1527(d)(2); 404.1546(c); <u>Vertigan</u>, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003); <u>Batson</u>, 359 F.3d at 1195; <u>see also</u> <u>Lingenfelter</u>, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); <u>Tommasetti</u>, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); <u>see also</u> <u>Schneider v. Comm'r</u>, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  <u>Althoff-Gromer v. Comm'r of Soc. Sec.</u>, No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222–23 (9th Cir. 2010)); <u>see also</u> <u>Chavez v. Colvin</u>, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

/ / /

/ / /

/ / /

2.      Weighing Medical Opinions and Prior Administrative Medical Findings[5]

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record, " where contradictory evidence is present. Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

---

[5]   Under the applicable regulations for evaluating medical evidence, State agency medical and psychological consultants do not provide "medical opinions."  Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process.  See 20 C.F.R. § 416.913(a)(5).  ALJs, however, must consider this evidence under the same rules that apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 416.913a(b)(1); see also 20 C.F.R. § 416.913(a) (identifying "medical opinions" and "prior administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").

1    other factors that "tend to support or contradict a medical opinion or prior administrative medical

2    finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

3    evaluating the persuasiveness of medical opinions and prior administrative medical findings are

4    supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

5    factor, the regulation provides that the "more relevant the objective medical evidence and

6    supporting explanations presented by a medical source are to support his or her medical

7    opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).

8    Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

9    from other medical sources and nonmedical sources in the claim, the more persuasive the

10   medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

11          Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

12   opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

13   404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the

14   [other remaining factors]," except when deciding among differing yet equally persuasive

15   opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is

16   "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R.

17   § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must

18   determine whether the ALJ adequately explained how she considered the supportability and

19   consistency factors relative to medical opinions and whether the reasons were free from legal

20   error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS,

21   2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

22          **B.       Any Error Regarding The Weighing of Dr. Fonseca's Opinion is Harmless**

23                 1.   Plaintiff's Arguments

24          Plaintiff argues that in crafting the RFC, the ALJ failed to properly consider the January

25   2020 opinion of Allen F. Fonseca, M.D.  (AR 38.)  As relevant to the principal argument

26   proffered by Defendant in opposition, "Plaintiff notes that the ALJ did not identify the opinion at

27   issue as attributable to Dr. Fonseca but instead identified it as a 'a physician's opinion…[at]

28   (5D/2)[,]' . . . [h]owever, the opinion itself plainly bears the typewritten name of 'Allen S.

1    Fonseca' along with a corresponding signature."  (Br. 15 n.2.)  Plaintiff proffers that there, in

2    pertinent part, Dr. Fonseca found Plaintiff could stand for only four to six hours, walk for four to

3    six hours, never sit; could never keyboard, grasp, push/pull, or kneel; and further limited Plaintiff

4    to lifting or carrying no more than twenty pounds. (AR 286.)

5         Plaintiff argues the restrictions assessed by Dr. Fonseca in his January 2020 opinion—

6    particularly, his limitations on sitting, keyboarding, grasping, pushing/pulling, and kneeling—

7    were not accommodated by the RFC which the ALJ adopted, and argues the ALJ did not provide

8    an adequate rationale for finding Dr. Fonseca's opinion to be less than fully persuasive, and his

9    analysis contains inadequacies that frustrate meaningful review.  Plaintiff also argues that an

10   ALJ's failure to discuss significant, probative record evidence that is clearly contrary to her

11   findings is a mischaracterization of evidence, and here the ALJ engaged in impermissible "cherry

12   picking" of the evidence—solely focusing on findings that align with his unpersuasive finding

13   with regard to the opinion of Dr. Fonseca while ignoring all other probative evidence.

14        2.   The Court finds any Error was Harmless

15        Dr. Fonseca, examined Plaintiff in connection with his application for workers

16   compensation benefits.  (AR 203.)  Dr. Fonseca examined Plaintiff on two occasions: May 16,

17   2019 (AR 208) and January 16, 2020 (AR 247).  Following each examination, Dr. Fonseca

18   provided a medical opinion regarding Plaintiff's functioning.  (AR 241, 277, 286.)

19        In May 2019, Dr. Fonseca opined that Plaintiff could lift up two 25 pounds, climb and

20   forward bend up to two hours per shift, and stand or walk up to four hours per shift, but could not

21   run, jump, or walk on uneven surfaces.  (AR 241.)  In January 2020, Dr. Fonseca wrote in a

22   narrative that Plaintiff could lift up to 20 pounds; climb, forward bend, crawl, and twist up to

23   four hours per shift; and stand and walk up to six hours per shift.  (AR 277.)  Dr. Fonseca added

24   that this "best describes his overall occupational restrictions or limitations"  (Id.)

25        As relevant to some confusion in the ALJ's opinion, and apparently in the Plaintiff's

26   challenge, Dr. Fonseca also completed a checkbox form.  (AR 286.)  In this form, Dr. Fonseca

27   checked a box stating that Plaintiff could "work with the following restrictions" and then

28   checked boxes next to each function.  As to this form, regarding sitting restrictions, Defendant

1   submits that Dr. Fonseca checked "none," and when asked about restrictions in kneeling,

2   keyboarding, grasping, pushing, and pulling, Dr. Fonseca also checked "none."  (AR 286.)

3   Defendant submits that this is consistent with Dr. Fonseca's narrative opinion, in which he

4   opined that Plaintiff could lift up to 20 pounds and stand or walk up to 6 hours per shift. (AR

5   277.)

6          The Court now excerpts the portion of the ALJ's opinion that appears to first weigh Dr.

7   Fonseca's narrative opinion, and then examines the checkbox form that is apparently based on

8   the narrative opinion, seemingly and erroneously referring to it as "a physician's opinion"

9   without recognizing that it was a checkbox form based on the same "later opinion" that the ALJ

10  weighed in the previous paragraph:

> The undersigned considered the opinion of Allen Fonseca, M.D., who opined that the claimant could not lift over 25 pounds. He could climb and forward bend up to two hours per shift. He could stand or walk up to four hours per shift. He could not run, jump, or walk on uneven surfaces (3D/54). In a later opinion, Dr. Fonseca stated that the claimant would be "precluded from lifting over 20 pounds, climbing, forward bending, crawling, or twisting up to four hours per shift; standing or walking up to six hours per shift" (4D/31). These opinions are persuasive. Dr. Fonseca supported the claimant's ability to lift, carry, and stand/walk at above the sedentary level by referencing normal findings from his examinations, such as the claimant's full strength (5/5), painless ranges of motion in the joints, and normal motor function and sensations. The undersigned similarly finds that the claimant can perform a range of light work with postural restrictions. The claimant's ability to perform light level work is consistent with many normal physical examinations in the record, revealing normal coordination, normal motor function, good strength, and normal ranges of motion in the joints (2F/10, 32, 140, 8F/132, 154).
>
> The undersigned considered a physician's opinion that the claimant could stand four to six hours, walk four to six hours, and never sit. He could climb and forward bend two to four hours. He could crawl and twist for two to four hours. He could never keyboard, grasp, and push/pull. He could never kneel. He could not lift/carry more than 20 pounds (5D/2). This opinion is not persuasive. The physician's assessment did not include any citations to objective evidence to support his conclusions. The undersigned agrees that the claimant requires some exertional and non-exertional restrictions given his morbid obesity, neuropathy, paraspinal tenderness, and painful ranges of motion of the spine (2F/7, 16, 80, 3F/4). However, the extreme limitations on sitting, keyboarding, grasping, pushing/pulling, and kneeling are inconsistent with many normal musculoskeletal examinations throughout the record,

1          revealing full strength, steady gait, and intact sensations, motor
2          function, and coordination (2F/48, 118, 8F/31).

3   (AR 38.)

4          Thus, when discussing the narrative opinions of Dr. Fonseca, the ALJ concluded that they

5   were persuasive.  (AR 38.)  Indeed, the RFC finding in the decision includes restrictions Dr.

6   Fonseca suggested in his narrative opinions.  (AR 34, 241, 277.)

7          Defendant submits that when analyzing the checkbox form, the ALJ interpreted the form

8   as opining that Plaintiff could "never sit," and "never keyboard, grasp, and push/pull." (AR 38,

9   citing AR 286.)  Defendant proffers that when comparing Dr. Fonseca's January 16, 2020

10  checkbox form opinion with his contemporaneous January 16, 2020 narrative opinion, it is clear

11  that the ALJ misinterpreted the form as an opinion that Plaintiff could never sit, keyboard, grasp,

12  push, or pull; but rather, Dr. Fonseca opined that Plaintiff had no restrictions in these areas.  (AR

13  277, 286.)

14         This seems like the most reasonable interpretation of the additional checkbox form when

15  read in conjunction with the contemporaneous examination narrative findings and actual

16  examination.  The checkbox form is dated January 16, 2020.  (AR 286.)  Where the form states

17  the employee can work with the following restrictions, the form has boxes to check 1-2 hours, 2-

18  4 hours, 4-6 hours, 6-8 hours, and "None."  Again, for sitting, kneeling, keyboarding, grasping

19  with the hands, and pushing/pulling with the hands, the boxes for "None" are checked.  (Id.)  For

20  standing and walking, the boxes for 4-6 hours are checked.  For climbing, forward bending,

21  crawling, and twisting, the boxes for 2-4 hours are checked.

22         The Court finds that any misinterpretation of the form by the ALJ was harmless error.

23  Most significantly, the Court agrees with Defendant that the ALJ appropriately considered Dr.

24  Fonseca's January 16, 2020 opinion in narrative form   (AR 38, citing AR 277), and that

25  Plaintiff's briefing does not argue otherwise (Br. 14-19).  Defendant appears correct that the

26  Plaintiff appears to focus the challenge on the assumption that Dr. Fonseca opined Plaintiff could

27  never sit, never kneel, never keyboard, never grasp, and never push/pull with the hands.

28         Importantly, in reply, Plaintiff does not dispute that the correct interpretation of the

checkbox form is that Dr. Fonseca actually opined there were no restrictions in these areas, rather than full restrictions in these areas.  (See Reply 3.)  Rather, Plaintiff simply argues that the ALJ was required to explain the persuasiveness factors under the relevant regulations.  While that is correct, Plaintiff does not dispute that the harmless error standard is still applicable to social security actions and applies to the weighing of medical opinions.

Additionally in that regard, as Defendant argues, the ALJ's analysis of Dr. Fonseca's January 16, 2020, opinion in narrative form indicates how the ALJ would analyze the checkbox form, if properly interpreted, and the regulations provide for source-level opinion articulation. See 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").

Turning back to the contemporaneous exam notes, the Court finds the exam notes support the finding that Dr. Fonseca found no limitation in these areas.  Defendant argues here that during the January 2020 examination by Dr. Fonseca, Plaintiff reported some ability to sit, and therefore an opinion that Plaintiff could *never* sit would be more limiting than Plaintiff's own self- report.  Specifically, under activities of daily living, where asked to rate limitations in activities on a scale from 0 to 10, zero meaning no limitation and 10 meaning not able to perform the activity, for "Sit for one-half hour," Plaintiff reported a number "6."  (AR 254.)  The Court notes that Plaintiff additionally stated a level "5" as to traveling in a car up to one hour.  (Id.) Significantly, the Court also notes as relevant to an opinion that Plaintiff could never keyboard or grasp with the hands, Plaintiff opined a level "3" as to "Write or type," as well as a "2" as to "Dress oneself."  (Id.)

Defendant submits that any error in the ALJ's rejection of Dr. Fonseca's January 2020 checkbox form opinion was harmless because they were illogical and the apparent result of the ALJ's misreading of the form.  See Gopher v. Colvin, 572 Fed.Appx. 478, 479 (9th Cir. 2014) (unpublished) ("Any error in the ALJ's rejection without explanation of Dr. Gray's statements regarding the amount of time [claimant] could stand or walk was harmless because Dr. Gray's statements were illogical and the apparent result of his misreading of a form").  The Court notes the circumstances were somewhat different in Gopher, given it appears the misreading was by

1  the doctor and not the ALJ.

2       Nonetheless, for the above explained reasons, the Court finds no discernible harmful

3  error in the ALJ's weighing of Dr. Fonsaco's narrative opinion.  Any error related to the ALJ's

4  reading of the checkbox form was harmless error for multiple reasons, and Plaintiff in reply does

5  not dispute the substantive aspects of the facts demonstrating such error was harmless.  See

6  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[W]e may not reverse an ALJ's decision

7  on account of an error that is harmless . . . [and] 'the burden of showing that an error is harmful

8  normally falls upon the party attacking the agency's determination.' " (quoting Shinseki v.

9  Sanders, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009))).  The Court concludes for

10  the reasons stated above that any error was " 'inconsequential to the ultimate nondisability

11  determination' in the context of the record as a whole." Molina, 674 F.3d at 1122 (quoting

12  Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008)).

13       The Court finds harmless error for the above reasons.  However, additionally, while

14  Plaintiff argues in reply that Defendant's second proffered defense regarding the ALJ's findings

15  regarding Plaintiff's performing of substantial gainful activity during the relevant period does not

16  absolve the ALJ from performing the appropriate analysis in subsequent steps (Reply 2), which

17  may be true, the Court finds that Defendant's argument does provide additional support to the

18  Court's finding of harmless error.  Specifically, as Defendant argues, the ALJ had earlier noted

19  that Plaintiff engaged in substantial gainful activity (SGA) in 2018, 2019, and 2020, with

20  $40,871.08 of earnings in 2020.  (AR 29, citing AR 297.)  The ALJ noted that this indicated "a

21  step one denial" and thus his proceeding through the remaining steps of the sequential evaluation

22  process was out of "an abundance of caution. " (AR 30.)  Defendant highlights the ALJ again

23  referenced this work activity later in his decision (AR 37), and thus, all of Dr. Fonseca's

24  opinions, whether narrative form or checkbox form, were written during times in which Plaintiff

25  was performing SGA.  See 20 C.F.R. § 404.1571 ("The work…that you have done during any

26  period in which you believe you are disabled may show that you are able to work at the [SGA]

27  level.  If you are able to engage in [SGA], we will find that you are not disabled.").

28       Accordingly, the Court finds any error based on the ALJ's mistaken reading of the

1  checkbox form as an additional medical opinion from an unnamed doctor, is clearly harmless

2  error based on the Court's review of the contemporaneous notes and narrative findings from Dr.

3  Fonseca, for all the reasons discussed above.  The Court additionally concludes the findings

4  regarding SGA provide additional support that any such error is harmless.

5  **C.  Rejection of State Agency Opinions and RFC Determination was not Erroneous in Relation to RFC Determination**

6

7  The ALJ weighed the state agency psychological consultant opinions as follows:

8

9  The undersigned considered the opinions of Pamela Hawkins, Ph.D., and H. Amado, M.D., State agency psychological consultants, who opined that the claimant did not have a severe mental impairment (1A, 3A). Their opinion is not persuasive. The consultants supported their opinion by referencing the claimant's independence with activities of daily living and normal mental status examinations. However, record evidence of the claimant's episodes of major depression, characterized by hopelessness, irritability, crying spells, and social withdrawal, is consistent with an assessment of severe mental impairment and associated functional limitations.

10

11

12

13

14  (AR 38.)   Therefore, the ALJ found in favor of Plaintiff that there was indeed such severe

15  impairments present.

16  However, Plaintiff submits that the ALJ rejected as unpersuasive the only mental

17  opinions of record—those proffered by Pamela Hawkins, Ph.D. and H. Amado, M.D, state

18  agency psychological consultants, who opined that Plaintiff did not have a severe mental

19  impairment.  Plaintiff then argues that the ALJ proceeded to assess said "associated functional

20  limitations" from whole cloth, and that this is impermissible as the ALJ may not substitute his

21  own lay opinion for the judgment of medical professionals.  See Pilgreen v. Berryhill, No. 17-

22  16535, 2019 WL 121256, at *1 (9th Cir. 2019) (ALJ "was not free to substitute his own lay

23  opinion" for physician's interpretations).[6]

24

25  [6]  The Court notes this case involved the previous standards for rejecting treating and examining physician opinions, and there, the ALJ impermissibly rejected the opinion of an examining physician:

26  The ALJ's rejection of Dr. Eitel's opinion was error. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ stated that Dr. Eitel's conclusions were "not fully supported by her

27

28

Plaintiff, acknowledging the rejection of the opinions was in his favor, argues that while the ALJ correctly found that the evidence of record warranted a finding of severity with regard to Plaintiff's mental impairments, the ALJ was not free to create his own mental limitations in the RFC.  Plaintiff highlights various treatment records.[7]

Plaintiff notes that the step-two inquiry is a *de minimis* screening device to dispose of groundless claims, but do not indicate the impact of medication on those diagnosed impairments, or on Plaintiff's ability to work on a functional basis.  Plaintiff argues that nevertheless, the ALJ reviewed the medical findings in these records and made a determination based on his own interpretation of that raw medical evidence, and such a determination cannot form the basis of an ALJ's RFC conclusion.  See Cortez v. Colvin, No. 1:15-CV-00102-EPG, 2016 WL 3541450, at *5 (E.D. Cal. June 24, 2016); Vasquez v. Berryhill, No. 1:16-CV-00448-GSA, 2017 WL

---

own findings." But in fact, the substance of his criticism concerned the extent of her testing and her interpretation of the results. The ALJ's assessment of Dr. Eitel's methodology and interpretation was not supported by any medical evidence, and he was not free to substitute his own lay opinion. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *cf. Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("[T]he ALJ's personal observations of Taylor do not constitute substantial evidence for rejecting any of the opinions of Taylor's physicians who have found Taylor psychologically impaired.").

Pilgreen, 757 F. App'x at 619.

[7] Plaintiff notes: a psychiatric treatment note from Craig Campbell, M.D., dated June 17, 2020, documents Plaintiff was seen for several months of depressive mood symptoms in the aftermath of a back injury (AR 713); that Plaintiff reported that he has become increasingly withdrawn and reluctant to participate in family and church activities for fear of being "a drag on the party" (AR 713); that Plaintiff endorsed crying spells, diffuse anxiety/uncertainty, globally disrupted sleep, a variable "out of whack" appetite with an overall increase in weight, and feelings of helplessness and hopelessness (AR 713); that on the mental status exam, his mood was "struggling" and his affect was tearful when discussing his inability to protect his family (AR 715); that Dr. Campbell diagnosed Plaintiff with a moderate episode of major depressive disorder (AR 719); that Plaintiff was recommended to try an antidepressant, possibly an SNRI such as Duloxetine, targeting both depressive and chronic pain symptoms (AR 720); that a follow-up treatment note from Dr. Campbell dated June 22, 2020, documents Plaintiff had no major changes since his last visit, continuing to struggle with low mood, low energy, amotivation, withdrawal, disturbed sleep/appetite, a negative outlook, and persistent physical discomfort associated with his back injury (AR 721); that Dr. Campbell started Mr. Scott on Cymbalta 30mg (AR 723); that on a follow-up treatment note from Dr. Campbell dated June 26, 2020, Plaintiff reported he had taken two doses of Cymbalta without any change in his symptoms, continuing to struggle with mood, low energy, amotivation, withdrawal, disturbed sleep/appetite, a negative outlook, and persistent physical discomfort associated with his back injury (AR 724); that Dr. Campbell continued the Cymbalta 30mg with a plan to increase the dosage to 60 mg. (AR 725); that a follow-up treatment note from Dr. Campbell dated July 8, 2020, documents Plaintiff's symptoms were unchanged, continuing to struggle with low mood, low energy, amotivation, withdrawal, disturbed sleep/appetite, a negative outlook, and persistent physical discomfort associated with his back injury (AR 727); and that Dr. Campbell increased the dosage of Cymbalta to 60mg. (AR 728).

2633413, at *6 (E.D. Cal. June 19, 2017) ("However, no psychologist or medical doctor had come to this conclusion.  Instead, the ALJ interpreted the CT scan and came to a medical conclusion regarding its meaning.  An ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.").  Plaintiff emphasizes the ALJ "assessed Plaintiff with highly-specific non-exertional limitations related to his mental health—finding that Plaintiff can: concentrate for periods of two hours on work related tasks before requiring a break; able to perform non-production pace/non-assembly line pace jobs, with few workplace changes, occasional decision-making, and no responsibility for the safety of others . . . [y]et, the ALJ reached these conclusions without the benefit of any medical guidance."

The Court is not wholly unreceptive to the type of argument presented by Plaintiff here.  See, e.g., Daniel Garcia v. Comm'r of Soc. Sec., No. 1:18-CV-00914-SAB, 2019 WL 3283171, at *7 (E.D. Cal. July 22, 2019); Fox v. Comm'r of Soc. Sec., No. 119CV00146LJOSAB, 2019 WL 6724355, at *14–15 (E.D. Cal. Dec. 11, 2019), report and recommendation adopted, No. 119CV00146LJOSAB, 2020 WL 469363 (E.D. Cal. Jan. 29, 2020).  Here however, the Court does not find the ALJ improperly interpreted medical data, or improperly made an RFC determination.

The ALJ was not required to adopt the findings or opinion of any of the physicians but rather was required to determine the RFC based on all of the evidence in the record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  The regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

The Court finds the ALJ utilized substantial evidence in the record in making the RFC

1   determination, and Plaintiff has not demonstrated error warranting remand.  Further, to the extent

2   Plaintiff argues the record needs to be further developed, the facts in this case are not similar to

3   other instances in which the ALJ was found to have a duty to further develop the record.  See

4   Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated

5   more information was needed to make diagnosis); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-

6   19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a

7   physician who recognized he did not have sufficient information to make a diagnosis).

8        As Defendant argues, in assessing Plaintiff's RFC, the ALJ reasonably noted Plaintiff's

9   self-reports, including that he was able to follow both written and spoken instructions, and get

10  along with others, including authority figures (AR 32-33, 378, 381); and the ALJ further noted

11  that on examination, Plaintiff "generally exhibited an intact recent and remote memory" as well

12  as normal attention, there were "no signs of cognitive impairment," he "displayed normal

13  judgment and insight," he had a "normal mood and affect," and he was described as "pleasant

14  and cooperative" (AR 32-33, 748, 752, 764, 808, 818, 826, 829, 939, 962).  See Loewen v.

15  Berryhill, 707 F. App'x 907, 908 (9th Cir. 2017) (upholding the ALJ's discounting of a

16  claimant's subjective complaints because of inconsistencies with mental status examinations).

17       The ALJ further noted Plaintiff's activities of daily living included completing simple

18  chores like laundry, preparing simple meals, driving a car, shopping in stores, handling his

19  finances, working as a wrestling coach, and caring for his two children including that he home-

20  schooled his six-year-old son during the relevant period (AR 33, 37, 376-87, 536, 743).  The ALJ

21  also noted that in June 2020 Plaintiff began treating his mental impairments with medication and

22  psychotherapy, which was noted to have improved his symptoms in July 2020, August 2020, and

23  September 2020.  (AR 36, 721, 731, 739, 744, 751, 759, 824.)  The ALJ noted that "records

24  show that [Plaintiff's] mental health significantly improved with psychotropic medication and

25  counseling" (AR 37, 739, 793).  See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017)

26  ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of

27  disability" based on a mental impairment); 20 C.F.R. pt. 404, subpt. P, app. 1 (2014) ("With

28  adequate treatment some individuals with chronic mental disorders not only have their symptoms

1   and signs ameliorated, but they also return to a level of function close to the level of function

2   they had before they developed symptoms or signs of their mental disorders").

3          Finally, Defendant notes that, in one sentence, Plaintiff makes an argument that "the ALJ

4   should have developed the record with a psychological consultative examination."  (Br. 22.)

5   However, as Defendant responds, the decision to order a consultative examination is

6   discretionary—the agency "may" decide to purchase a consultative examination "to try to

7   resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to

8   support a determination or decision."  20 C.F.R. § 404.1519a.[8]  Here, the Court agrees it is

9   significant there are no opinions indicating that Plaintiff is more limited than as stated in the RFC

10  finding, and thus any inconsistency in the evidence was to Plaintiff's benefit, and agrees that

11  here, the existing medical record – including Plaintiff's self-reported abilities, activities of daily

12  living, and improvement with treatment – provided sufficient evidence to determine whether

13  Plaintiff was disabled, and substantial evidence supports the ALJ's decision.  The regulations

14  provide the following guidance for utilizing evidence in assessing an RFC, and allows for

15  ordering a consultative exam "if necessary":

16              (3) Evidence we use to assess your residual functional capacity.
                We will assess your residual functional capacity based on all of the
17              relevant medical and other evidence. In general, you are
                responsible for providing the evidence we will use to make a
18              finding about your residual functional capacity.   (See §
                404.1512(c).) However, before we make a determination that you
19              are not disabled, we are responsible for developing your complete
                medical history, including arranging for a consultative
20              examination(s) if necessary, and making every reasonable effort to
                help you get medical reports from your own medical sources.
21

22  20 C.F.R. § 404.1545(a)(3).  Plaintiff has not demonstrated that it was necessary for the ALJ to

23

24  ---

    [8]  Generally, "[t]he claimant has the burden of proving that [he] is disabled."  Smolen, 80 F.3d at 1288.
    However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the
25  claimant's interests are considered . . . even when the claimant is represented by counsel."  Celaya v. Halter, 332
    F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  "An ALJ's duty to
26  develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to
    allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss,
27  427 F.3d at 1217 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill, 697 Fed. App'x 548,
    549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for
28  proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the
    record.").

1   arrange for a consultative exam.

2        The Court concludes the ALJ utilized substantial evidence in the record in making the

3   RFC determination, and Plaintiff has not demonstrated error warranting remand.  See, e.g.,

4   Hogan v. Kijakazi, No. 1:20-CV-01787-SKO, 2022 WL 317031, at *11 (E.D. Cal. Feb. 2, 2022)

5   ("Plaintiff's argument appears to be predicated on the incorrect assumption that, as a matter of

6   law, an ALJ is unqualified to independently interpret any medical records post-dating the agency

7   physicians' review . . . the ALJ determined that the agency medical consultants' findings that

8   Plaintiff could occasionally reach overhead were not supported in light of the subsequent

9   medical records showing a worsening of his shoulder conditions.  To account for this worsening

10  range of motion in Plaintiff's shoulders, the ALJ adopted a further restriction of no overhead

11  reaching. [] The ALJ did not make a medical finding, and instead made an administrative finding

12  regarding Plaintiff's ability to perform basic work functions given his medical impairments,

13  which is specifically a determination reserved to the ALJ."); Ford v. Saul, 950 F.3d 1141, 1156

14  (9th Cir. 2020) (as an ALJ's duty to develop the record further is triggered only when there is

15  ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

16  evidence, "[g]iven that the ALJ had years of Ford's mental health records and multiple opinions

17  from non-examining psychiatrists to inform her decision, this duty was not triggered."); Corwin

18  v. Kijakazi, No. 1:20-CV-00394-GSA, 2021 WL 5771658, at *6 (E.D. Cal. Dec. 6, 2021)

19  ("Plaintiff's argument is belied by the fact that there is always a gap in time between the non-

20  examining DDS physician's review at the initial/reconsideration levels and the ALJ's subsequent

21  hearing decision, and claimants routinely continue pursuing care in the interim thereby

22  generating new medical records.  If the mere passage of time and presence of additional medical

23  evidence in the record established ambiguity, a consultative examination would be required in

24  every case . . . such cases do not purport to establish (nor would they be controlling if they did) a

25  rule of general applicability that an ALJ must obtain an examining opinion in every case before

26  rendering an RFC determination.").

27        The Court finds the objective medical evidence and other evidence in the record supports

28  the reasonableness of the ALJ's RFC determination.  See Bayliss v. Barnhart, 427 F.3d 1211,

1   1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ

2   applied the proper legal standard and his decision is supported by substantial evidence . . . In

3   making his RFC determination, the ALJ took into account those limitations for which there was

4   record support that did not depend on Bayliss's subjective complaints."); Matthews v. Shalala, 10

5   F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a

6   disability," and a claimant bears the burden of proving the impairment is disabling).

7       Based on the applicable caselaw and regulations before the Court, the Court concludes

8   the ALJ's RFC assessment to be based on substantial evidence in the record, and Plaintiff has not

9   demonstrated that the ALJ erred by failing to further develop the record.  See Smolen, 80 F.3d at

10  1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d

11  at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

12  conclusion that must be upheld.").  Indeed, there is "a presumption that ALJs are, at some level,

13  capable of independently reviewing and forming conclusions about medical evidence to

14  discharge their statutory duty to determine whether a claimant is disabled and cannot work."

15  Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022); Tommasetti, 533 F.3d at 1041–42 ("[T]he

16  ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Batson,

17  359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences

18  reasonably drawn from the record . . . and if evidence exists to support more than one rational

19  interpretation, we must defer to the Commissioner's decision.") (citations omitted).

20      Accordingly, the Court finds no harmful or reversible error in the ALJ's RFC

21  determination, or in the weighing of the physician opinions.  See Rounds v. Comm'r of Soc.

22  Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and

23  incorporating clinical findings into a succinct RFC.").  While Plaintiff argues the ALJ ignored

24  critical evidence, the Court finds that contention not supported by the opinion and the record as a

25  whole.  See Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational

26  interpretation, it is the ALJ's conclusion that must be upheld.").  The Court finds the ALJ's RFC

27  determination to be proper, reasonable, based on substantial evidence in the record, and free

28  from reversible legal error.

1

**V.**

2

**CONCLUSION AND ORDER**

3       In conclusion, the Court rejects the Plaintiff's challenges and finds no harmful error

4   warranting remand of this action.

5       Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment

6   is DENIED, Defendant's cross-motion for summary judgment is GRANTED, and Plaintiff's

7   appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER

8   ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security

9   and against Plaintiff Gregory Leon Scott.  The Clerk of the Court is directed to CLOSE this

10  action.

11

12  IT IS SO ORDERED.

13  Dated:   **August 16, 2023**

                                                    UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28